UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANITA MARIE HELTON,                     Civil Action No. 14-14931


      Plaintiff,                          HON. VICTORIA A. ROBERTS
                                        U.S. District Judge
v.                                      HON. R.  STEVEN WHALEN
                                        U.S. Magistrate Judge
COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.
_____/

## REPORT AND RECOMMENDATION

    Plaintiff Anita Marie Helton ("Plaintiff") brings this action under 42 U.S.C. §405(g),

challenging a final decision of Defendant Commissioner denying her applications for

Disability Insurance Benefits ("DIB") under the Social Security Act.  Both parties have filed

summary judgment motions which have been referred for a Report and Recommendation

pursuant to 28 U.S.C. § 636(b)(1)(B).  For the reasons set forth below, I recommend that

Defendant's motion for summary judgment be GRANTED and that Plaintiff's motion be

DENIED.

## PROCEDURAL HISTORY

    On January 30, 2012, Plaintiff filed an application for DIB, alleging disability as of

January 6, 2011  (Tr.  100-101).  After the initial denial of the claim, she requested an

administrative hearing, held on August 29, 2013 before Administrative Law Judge ("ALJ") Oksana Xenos in Detroit, Michigan (Tr. 27). Plaintiff, represented by attorney Steven H. Stilman, testified (Tr. 30-38), as did Vocational Expert ("VE") Lois Brooks (Tr. 38-42). On September 9, 2013, ALJ Xenos found that Plaintiff was not disabled (Tr. 13-21). On October 31, 2014, the Appeals Council denied review (Tr. 1-5). Plaintiff filed for judicial review of the Commissioner's decision on December 30, 2014.

## BACKGROUND FACTS

Plaintiff, born October 31, 1961, was 51 when the ALJ issued her decision (Tr. 13, 100). She completed two years of college and worked previously as a "technician" and a transcriber (Tr. 114). Her application for benefits alleges disability as a result of cervical spondylosis, coronary artery disease, an aortic aneurysm, brandycardia, glaucoma, heart disease, generative disc disease, and osteoarthritis of the neck, spine, shoulder, lower back, hip, and knees (Tr. 113).

### A.    Plaintiff's Testimony

Plaintiff offered the following testimony:

Plaintiff, right-handed, stood 5' 5" and weighed 165 pounds (Tr. 30). She lived with her husband in Dearborn Heights, Michigan (Tr. 30). She had an Associates degree in general studies (Tr. 30). She had not worked since 2011, when she worked as a medical transcriber (Tr. 31). She stopped working when arthritis of the shoulder prevented her from typing continuously (Tr. 31). Before working as a self-employed medical transcriber, she

-2-

worked as a claims processor, noting that the job ended when she was laid off (Tr. 31). She reported an unsuccessful work attempt as a Kroger associate, which required her to push carts out of the parking lot (Tr. 32). She claimed disability as a result of pain, neck problems, and arm and hand weakness (Tr. 32). As a result of the upper extremity problems, she was unable to garden and experienced difficulty cooking (Tr. 33). She was unable to sit for more than 20 minutes, stand for more than 30, walk for more than one block, or lift more than five pounds (Tr. 33-34).

Plaintiff was able to drive herself to the hearing but did not drive more than five miles a week (Tr. 34). She was able to perform laundry and household chores (Tr. 34). She had two dogs but did not walk them (Tr. 34). She typically watched two hours of television each day (Tr. 35). She enjoyed reading fiction (Tr. 35). She did not spend more than 10 minutes a day online (Tr. 35). Her hand condition made embroidery difficult (Tr. 35). She smoked about half a pack of cigarettes each day but denied the use of alcohol or illicit drugs (Tr. 35).

In response to questioning by her attorney, Plaintiff testified that she spent half of her waking hours reclining (Tr. 36). She reported that the daytime fatigue was attributable to sleep disturbances caused by shoulder and hip pain (Tr. 36). She alleged low energy (Tr. 37). She opined that her need to take frequent rest breaks would preclude all work (Tr. 37). On "bad" days, she reported that she spent more than 50 percent of the day reclining (Tr. 37). She testified that she had been treated by Dr. Ringold for "about 30 years" (Tr. 38). She stated that she did not know whether she was capable of part-time work (Tr. 38).

-3-

**B.    Medical Evidence**

### 1. Treating Sources

An August, 2006 CT of the thorax showed an ascending thoracic aortic aneurysm (Tr. 223, 361). A September, 2006 stent angioplasty of the right coronary artery was performed without complications (Tr. 356). In April, 2007, Plaintiff sought emergency treatment for chest discomfort (Tr. 353). A CT of the thorax was negative for aneurysm (Tr. 277). A cardiac catheterization was also negative (Tr. 354). A September, 2008 CTA showed an aneurysmal dilation of the ascending aorta (Tr. 219). In December, 2008, laparoscopic surgery confirmed a diagnosis of biliary colic (Tr. 329). June and July, 2009 ophthalmological records state that Plaintiff took Lumingan for glaucoma (Tr. 265, 267). A September, 2009 x-ray of the right elbow showed "soft tissue swelling" but was otherwise normal (Tr. 215, 228, 315). An irrigation and debridement of the right elbow was performed without complications after Plaintiff exhibited cellulitis (Tr. 319, 323). The same month, Fayda N. Zakaria, M.D. found that Plaintiff's cardiac condition was "stable" (Tr. 318).

Dr. Ringold's notes from June, 2010 state that Plaintiff reported hand weakness and neck pain (Tr. 406). July, 2010 ophthalmological records note a diagnosis of glaucoma (Tr. 243). In October, 2010, Plaintiff was diagnosed with mild reflux esophagitis (Tr. 310).

In January, 2011, Plaintiff reported reduced strength in both arms and that she was "dropping things" (Tr. 192, 405). A January, 2011 x-ray of the cervical spine showed "mild

-4-

osteoporosis" and "[s]traightening of the cervical spine . . . . "consistent with" Plaintiff's report of muscle spasms (Tr. 186, 412).   A CT of the cervical spine from the same month showed no disc herniation or "high-grade" stenosis but showed "multilevel severe disc space narrowing" (Tr. 206-207, 413-414).  The same month, an ultrasound was negative for carotid stenosis (Tr. 208, 415).  A February, 2011 MRI of the cervical spine showed "mild" stenosis at C5-C6and C6-C7 (Tr. 187-188).  March, 2011 ophthalmological records note Plaintiff's report that vision distortion made driving "difficult" (Tr. 255).  August, 2011 treating notes state that a recent stress test, EKG and echocardiogram were all normal (Tr. 190, 403). The same month, a bone scan showed "no definite abnormality" but the presence of arthritic and degenerative disease of the major joints (Tr. 300-301, 411).  The following month, an echocardiogram was also normal with an ejection fraction of 70 percent (Tr. 291-294).  An October, 2011 imaging study was negative for an abdominal aortic aneurysm (Tr. 296). November, 2011 ophthalmological records note a diagnosis of "normal-tension glaucoma" (Tr. 229).

A January, 2012 x-ray of the abdomen was suggestive of constipation but otherwise negative (Tr. 203, 408).  April, 2012 imaging studies show that Plaintiff's cardiac conditions were stable (Tr. 278, 297-298, 397).  July, 2012 imaging studies of the right shoulder showed "mild" degenerative changes (Tr. 363).   Imaging studies of the sacrum and hips were unremarkable (Tr. 364, 382-383).

In October, 2012, Dr. Ringold completed an "Arthritis Medical Source Statement,"

on behalf of Plaintiff's application for benefits, noting the symptoms of severe pain of the hips, neck, back, shoulders, and wrists (Tr. 373).  He characterized the pain as "chronic," noting range of motion limitations, reduced grip strength, abnormal posture, tenderness, trigger points, an abnormal gait, and "positive straight leg raising test" (Tr. 373).  He found that "emotional factors" did not contribute to Plaintiff's condition, but found that she experienced depression as a result of the fact that her husband was a quadriplegic (Tr. 374).

Dr. Ringold found that Plaintiff was unable to sit for more than 20 minutes at a time, stand for more than 10, or walk for more than one block (Tr. 374).  He found that Plaintiff was unable to stand or walk for even two hours in an eight-hour day or sit for more than two (Tr. 374).  He found that Plaintiff needed to walk every 20 minutes for 10 minutes at a time (Tr. 374).  He found that Plaintiff would require "several" unscheduled breaks each workday, each lasting up to 15 minutes (Tr. 375).  He found that while Plaintiff was sitting, she would need to elevate her legs to a 45 degree angle for 80 percent of the workday (Tr. 375).  He found that Plaintiff did not need a cane or walker (Tr. 375).  He found that Plaintiff was limited to lifting less than 10 pounds occasionally, occasional twisting, rare stooping or climbing stairs, and precluded from all crouching and climbing of ladders (Tr. 375).  He found that Plaintiff was unable to perform any manipulative activities for more than five percent of an eight-hour work period (Tr. 376).  He found that she would be "off task" 25 percent or more of the workday (Tr. 376).  He found that she was capable of "low stress" work (Tr. 376).  He found that Plaintiff's impairments would cause her to miss four or more

-6-

days of work each month (Tr. 376).  He found that the cardiac and arthritic conditions also precluded work involving "cold, heat, fumes, dust, [and] gases" (Tr. 376).  The same month, Peter Mancini, M.D. found that Plaintiff's cardiac condition was stable (Tr. 395-396).

January, 2013 imaging studies of the lumbar spine showed spondylosis (Tr. 380).  The same month, Ali Dagher, M.D., noting that he had been treating Plaintiff since the previous July, observed diminished left hip range of movement with "crepitus in the knees" (Tr. 379).  He noted that the "straight leg raising test was limited and painful on the left . . ." (Tr. 379).  He recommended physical therapy (Tr. 379).  Plaintiff reported to Dr. Dagher that she did not experience back pain and that her right shoulder condition had improved (Tr. 378).  April, 2013 ophthalmological records state that Plaintiff continued to receive treatment for glaucoma (Tr. 425).  May, 2013 cardiac studies show either mild or unremarkable results (Tr. 393-394).  The following month, Dr. Ringold composed a letter on behalf of Plaintiff's application for benefits, opining that she was "completely disabled" due to "cardiac and orthopedic problems" (Tr. 423).

### 2.  Non-Treating Sources

In August, 2012, Aleksandra Trifunovic, D.O. performed a consultative physical examination on behalf of the SSA, noting Plaintiff's report of hypertension (well controlled), cardiac stent placement in 2006, occasional shortness of breath, dull neck pain, hand weakness, and problems lifting her arms overhead (Tr. 366).  She reported that she did not want to undergo surgery for the neck and upper extremity problems (Tr. 366).  She denied

problems walking (Tr. 366).  Plaintiff reporting smoking a half-pack of cigarettes each day (Tr. 367).

Dr. Trifunovic observed a normal gait but a decreased range of motion in the cervical spine, shoulder, and hips (Tr. 367-368).  Plaintiff exhibited a normal grip strength and was able to squat and get on and off the examination table without difficulty (Tr. 367).  Dr. Trifunovic noted 5/5 motor strength (Tr. 368).  Dr. Trifunovic opined that "given how [Plaintiff's] right shoulder affects her, as well as her neck, I would consider her for disability" (Tr. 369).  An x-ray of the right shoulder showed "mild degenerative arthritis . . . otherwise negative" (Tr. 371).

The same month, Tariq Mahmoud, M.D. performed a non-examining assessment of Plaintiff's residual functional capacities on behalf of the SSA, finding that Plaintiff could lift 20 pounds occasionally and 10 frequently; sit, stand, or walk for around six hours in an eight-hour workday, and push and pull without limitation (Tr. 49-50).  He found that Plaintiff was limited to occasional climbing, stooping, kneeling, crouching, and crawling (Tr. 50).  As to the manipulative functions, he found that Plaintiff was limited to occasional right shoulder activity (Tr. 50-51).  Dr. Mahmoud concluded that Plaintiff was capable of performing her past relevant work as a transcriber (Tr. 52).

### 3.  Evidence Submitted After the ALJ's September 9, 2013 Determination[1]

On October 30, 2013, Plaintiff's attorney, Steven Stilman, conducted a deposition of Dr. Ringold (Tr. 439-471).  Dr. Ringold stated that he disagreed with ALJ Xenos' rejection of his October, 2012 and June, 2013 disability opinions (Tr. 18-19, 449).  Dr. Ringold disputed the ALJ's finding that the imaging studies showed mild conditions (Tr. 449).  He stated that his October, 2012 disability opinion was done "by memory" (Tr. 449).   Dr. Ringold stated that he saw Plaintiff much more often than the treating records indicated, noting that he saw her while visiting her home-bound husband (Tr. 446, 450).  He noted that on occasion when visiting her house, he had given her facet injections (Tr. 450).  He objected to the characterization of the January, 2011 cervical spine conditions  as "mild," stating that he would classify the degenerative changes as "moderate to severe" (Tr. 186-187, 206-207, 451).  He stated that the imaging studies supported his October, 2012 opinion that Plaintiff would require unscheduled breaks of up to 15 minutes (Tr. 453).  Dr. Ringold stated that the August, 2012 bone scan reflected "moderate to severe pain most of the time" and that the bone scan showed "increased activity" in "the thoracic spine, shoulders, wrists, hips, both

---

[1]    Under the sixth sentence of 42 U.S.C. § 405(g), material submitted subsequent to the administrative decision is subject to a narrow review by the district court. *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir.1993). To establish grounds for a Sentence Six remand, the claimant must show that the "new evidence is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding ... " § 405(g).  As discussed below, the Court finds that Plaintiff has not presented grounds for a Sentence Six remand.

knees, ankles and the dorsum of the feet . . ." (Tr. 454).  He said that his opinion that Plaintiff

needed to elevate her feet was based on his observation of her at home (Tr. 455).

Dr. Ringold acknowledged that the October, 2012 disability opinion was "a very

subjective form for a doctor to fill out" and that he "filled it out pretty quickly" because he

believed that Plaintiff's "cardiac abnormalities were easily going to be sufficient for her

disability . . ." (Tr. 457).  He admitted that he had not seen Plaintiff "in the office" since

January, 2012, but noted that she had experienced ulcerated colitis well before the ALJ's

September 9, 2013 determination (Tr. 458).  He opined that the ulcerative colitis, causing

diarrhea multiple times a day, would also interfere with her work abilities due to lowered

potassium levels (Tr. 458, 464).  He found that angina created shortness of breath after

walking 50 yards (Tr. 460).  Dr. Ringold stated that he imposed lifting restrictions of less

than 10 pounds due to Plaintiff's thoracic aneurysm (Tr. 463).

### C.        Vocational Expert Testimony

The ALJ then posed the following question to VE Brooks,  describing a hypothetical

individual of Plaintiff's age, education and work experience:

[C]an perform work at the light exertional level.[2]  Cannot climb ladders, ropes

---

[2]

20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds
at a time and occasionally lifting or carrying articles like docket files, ledgers, and small
tools;  *light* work as "lifting no more than 20 pounds at a time with frequent lifting or
carrying of objects weighing up to 10 pounds;"  *medium* work as "lifting no more than 50
pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and
that exertionally *heavy*  work "involves lifting no more than 100 pounds at a time with
frequent lifting or carrying of objects weighing up to 50 pounds.

or scaffolds.  Can occasionally climb stairs and ramps, balance, stoop, kneel, crouch and crawl.  Can occasionally reach overhead and laterally with the right upper extremity.  Should avoid concentrated exposure to fumes, odors, noxious gases and temperature extremes.  Can an individual with that residual functional capacity perform any of the claimant's past work? (Tr. 39).

The VE replied that  the above limitations would preclude all of Plaintiff's past relevant work but would allow for jobs as a counter attendant (3,000 positions in southeastern Michigan); usher (1,150); and child attendant (1,150)  (Tr. 39-40).  The VE found that if the limitations were amended to include a "sit/stand at will option," all of the above jobs would be eliminated, but if the option to sit for "three to four" minutes each hour were added to the limitations, the job numbers would remain unchanged (Tr. 40).  The VE testified further that if the original hypothetical were for sedentary rather than light work, the hypothetical individual could perform the work of a telephone clerk (2,600); order clerk (1,200); and clerical work (2,200) (Tr. 41).  The VE testified that if the same individual were off task up to 20 percent of the workday due to pain and other impairments, or, was unable to sit, stand, or walk for a total of eight hours a day five days a week, all competitive employment would be eliminated (Tr. 41).  The VE stated that her testimony was consistent with the information found in the *Dictionary of Occupational Titles* ("DOT"), except for her testimony regarding a sit/stand option, which was based on her own experience (Tr. 41).  In response to questioning by Plaintiff's attorney, the VE stated that "absenteeism two or more times a month" would be work preclusive (Tr. 42).

-11-

### D. The ALJ's Decision

Citing the medical records, ALJ Xenos found that Plaintiff experienced the "severe" impairments of "coronary artery disease; osteoarthritis; and spine disorder" but that none of the conditions met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 15). The ALJ found that Plaintiff had the Residual Functional Capacity ("RFC") for light work with the following additional limitations:

> [T]he claimant cannot climb ladders, ropes, or scaffolds and can only occasionally climb stairs/ramps, balance, stoop, kneel, crouch, and crawl. The claimant can occasionally reach overhead and laterally with the right upper extremity. The claimant should avoid concentrated exposure to fumes, odors, noxious gases, and temperature extremes. The claimant can frequently finger and handle objects. The claimant requires the ability to sit/stand every hour for three to four minutes at a time (Tr. 16).

Citing the VE's job numbers, the ALJ determined that while Plaintiff was unable to perform any of her past relevant work, she could work as counter attendant, usher, and child attendant (Tr. 20).

The ALJ discounted the allegations of disability. She cited imaging studies performed from April, 2007 forward showing that Plaintiff's cardiac condition remained stable (Tr. 16-17). The ALJ noted that a January, 2011 x-ray of the spine showed mild osteoporosis (Tr. 17). She acknowledged a February, 2011 MRI of the cervical spine showing mild spinal canal stenosis and an August, 2011 imaging study of the lumbar spine showing arthritic and degenerative disease at L2-L3 (Tr. 17). The ALJ noted that August, 2012 consultative examination records showed decreased range of motion of the cervical spine, shoulders, and

-12-

hips (Tr. 17). She noted that an x-ray of the shoulder taken the same month showed only mild degenerative arthritis (Tr. 17). The ALJ observed that the consultative examiner found full grip strength and "full hand dexterity" (Tr. 17). She noted that Plaintiff had "no difficulty" walking (Tr. 17).

The ALJ found that Plaintiff's claims of limitation were undermined by her ability to care for her disabled husband on a daily basis (Tr. 18). The ALJ discounted Dr. Ringold's October, 2012 and June, 2013 assessments, finding that the objective studies showed "only mild abnormalities," and that Plaintiff's conditions were "fairly well controlled with medication and other conservative therapies" (Tr. 18). The ALJ noted that Plaintiff had not required frequent treatment (Tr. 18-19). She found that Dr. Ringold's findings were also undermined by Plaintiff's demonstrated "good muscle strength and dexterity in the upper extremities" (Tr. 19).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and

-13-

"presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof as steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the

-14-

residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

### A.  The Treating Physician Analysis

Plaintiff argues that the ALJ erred by discounting Dr. Ringold's October, 2012 and June, 2013 disability opinions. *Plaintiff's Brief,* 15-22, *Docket #17.*  Plaintiff takes issue with the ALJ's finding that she was "not bound by a treater's opinions 'where there is substantial medical evidence to the contrary.'" *Id.* at 15 *(citing* Tr. 18).  Plaintiff argues that this finding "runs contrary to post-SSR 96-2p [case] law," which requires more than conflicting opinions by non-treating physicians to discount a treating opinion.  *Id. (citing* SSR 96–2p, 1996 WL 374188, *5 (July 2, 1996)).

Plaintiff is correct that the failure to articulate "good reasons" for rejecting a treating physician's opinion constitutes reversible error. *Gayheart v. CSS*, 710 F.3d 365, 376 (6th Cir.2013); *Wilson v. CSS*, 378 F.3d 541, 544–546 (6th Cir.2004)(citing § 404.1527(c)(2)). In explaining the reasons for giving less than controlling weight to a treating physician opinion, the ALJ must consider (1) 'the length of the ... relationship" (2) "frequency of examination," (3) "nature and extent of the treatment," (4) the "supportability of the opinion," (5) "consistency ... with the record as a whole," and, (6) "the specialization of the treating source." *Wilson*, at 544. "These reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the

adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Gayheart*, at 376 (citing SSR 96–2p at *5). Moreover, *"* substantial evidence" conflicting with the treating physician's opinion "must consist of more than the medical opinions of the nontreating and nonexamining doctors." *Id.* "Otherwise the treating-physician rule would have no practical force because the treating source's opinion would have controlling weight only when the other sources agreed with that opinion."

Plaintiff's argument that the ALJ relied only on contradicting non-treating opinions to support the rejection of Dr. Ringold's findings is unavailing. To the contrary, the ALJ noted that Dr. Ringold's opinions stood at odds with imaging studies showing "only mild abnormalities" and that Plaintiff's conditions were well-controlled "with medication and other conservative therapies" (Tr. 18). She cited examination notes showing that Plaintiff demonstrated "good muscle strength and dexterity in the upper extremities" (Tr. 19). The ALJ also noted that Plaintiff acknowledged that she was able to care for her disabled husband which would require lifting of more than the "less than 10 pounds" limitation found in Dr. Ringold's assessment (Tr. 19, 375). The ALJ's findings are consistent with Plaintiff's report that her activities included grocery shopping independently; feeding and bathing her husband; and performing laundry and household chores (Tr. 122).

Plaintiff argues that the ALJ's observation that the imaging studies show mild findings are contradicted by the January, 2011 CT and an MRI interpretation from the following month showing multilevel *severe* disc space narrowing," and "severe" neuroforaminal

-16-

narrowing at C6-C7 respectively (Tr. 187-188, 206-207)(emphasis added). However, both studies show predominantly "mild" findings. While Plaintiff argues that the ALJ also mis-characterized the results of the August, 2011 bone scan showing arthritic and degenerative changes, the reports found "no definite abnormality" (Tr. 300-301). Plaintiff also argues that Dr. Dagher's January, 2013 findings of a decreased range of lumbosacral spine movement and knee crepitus supports Dr. Ringold's assessment (Tr. 378-379). *Plaintiff's Brief* at 18. However, Dr. Dagher's January, 2013  treating notes tend to undermine rather than support the disability claim. At the same appointment, Plaintiff acknowledged that she took care of her husband which involved "a lot of lifting and turning . . ." (Tr. 378). She reported improved right shoulder pain and that the peripheral joints were "doing okay without swelling or stiffness" (Tr. 378). She denied current chest pain or diarrhea (Tr. 378).

Plaintiff also faults the ALJ for discounting Dr. Ringold's opinion on the basis that she had not undergone aggressive treatment for her conditions since the alleged onset of disability. *Plaintiff's Brief* at 19 (*citing* Tr. 18-19). Plaintiff points out that arthritis, by nature, would not respond to aggressive or "invasive" treatment. *Id.* However, the finding in its entirety states that Plaintiff had not required frequent treatment "of an invasive or extreme nature for exacerbations or hospitalizations" (Tr. 19). Read in context, the ALJ appears to be referring to not just arthritis but also the heart condition and the ulcerative colitis (Tr. 18-19). The ALJ did not err in finding that while Plaintiff received aggressive treatment for heart problems prior to the alleged onset of disability, the relevant treating

records indicate that Plaintiff's condition had stabilized (Tr. 190, 208, 291-294, 296).

Plaintiff also argues, in effect, that Dr. Trifunovic's consultative conclusion supports Dr. Ringold's October, 2012 opinion. *Plaintiff's Brief* at 20 (*citing* Tr. 17, 367-369). Specifically, she faults the ALJ for citing Dr. Trifunovic's unremarkable cardiac exam and observations of "full grip strength" and "full hand dexterity," while ignoring his conclusion that he would "consider [Plaintiff] for disability" (Tr. 367-369). However, the ALJ's omission does not provide grounds for remand. First, while the ALJ did not acknowledge Dr. Trifunovic's conclusion, she noted that the consultative examiner reviewed an x-ray of the right shoulder showing only mild degenerative changes and negative imaging studies of the knees (Tr. 17, 371-372). Moreover, the ALJ acknowledged the findings supporting the allegations of disability, including Dr. Trifunovic's observation of a decreased range of "cervical spine, bilateral shoulder, and bilateral hip movement" (Tr. 17). The ALJ's summation accurately reflects the consultive observations.

Second, because Dr. Trifunovic was not a treating source, her "conclusion," is "entitled to no special degree of deference." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir.1994) *(citing Atterberry v. Secretary of Health & Human Servs.,* 871 F.2d 567, 572 (6th Cir.1989)). Third, even assuming that the ALJ ought to have cited Dr. Trifunovic's conclusion, Plaintiff's argument that it was not factored into the determination is without merit. Non-examining source Dr. Mahmoud referenced Dr. Trifunovic's "disability conclusion" in performing the non-examining review of the records (Tr. 48), but nonetheless,

-18-

found that the objective evidence and treating records supported the finding that Plaintiff could perform light work (Tr. 49-52). Correspondingly, the ALJ accorded "significant weight" to Dr. Mahmoud's conclusions[3] (Tr. 19).

Because the ALJ's rejection of Dr. Ringold's opinion is supported by the objective studies, the treating and non-treating records, and Plaintiff's account of her daily activities, it should remain undisturbed.

### B. The Evidence Submitted After the Administrative Decision Does Not Support a "Sentence Six" Remand

Dr. Ringold's October 30, 2013 deposition testimony was submitted after the ALJ's September 9, 2013 administrative determination (Tr. 4, 439-471). Plaintiff does not cite the deposition testimony in her brief or otherwise argue that the new evidence presents grounds for remand. Nonetheless, the Court has considered whether the deposition testimony supports a remand under the sixth sentence of 42 U.S.C. 405(g). *See Street v. Commissioner of Social Security,* 390 F.Supp.2d 630, 640-641 (E.D.Mich.2005) (*relying on Igonia v. Califano*, 568 F.2d 1383, 1387 (D.C.Cir.1977)(plaintiff's failure to request a Sentence Six remand does not prevent the court from granting such relief *sua sponte*).

In his deposition, Dr. Ringold stated that he disagreed with ALJ Xenos' rejection of his October, 2012 and June, 2013 disability opinions (Tr. 18-19, 373-376, 449). He disputed

---

[3]

While the ALJ accorded significant weight to Dr. Mahmoud's conclusions, the RFC found in the administrative opinion contains environmental limitations not found in the assessment completed by the non-examining source (Tr. 49-52).

the ALJ's finding that the imaging studies showed "mild" conditions, contending that the January and February, 2011 cervical spine studies showed significant degenerative changes (Tr. 186-187, 206-207, 449-451). Dr. Ringold stated that the August, 2012 bone scan reflected "moderate to severe pain most of the time" and that the bone scan showed "increased activity" in "the thoracic spine, shoulders, wrists, hips, both knees, ankles and the dorsum of the feet . . ." (Tr. 454).

Dr. Ringold testified that he actually saw Plaintiff more often than the treating records indicated, noting that he saw her while visiting her home-bound husband (Tr. 446, 450). He noted that while visiting her husband, he had given her facet injections for arthritis (Tr. 450). He stated that the imaging studies and the condition of ulcerative colitis supported his October, 2012 opinion that Plaintiff would require unscheduled breaks of up to 15 minutes over the course of a workday (Tr. 453, 456-457). He testified that his opinion that Plaintiff needed to elevate her feet was based on his observation of her at home (Tr. 455).

Sentence Six of 42 U.S.C. § 405(g) states that the court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding ..." To satisfy the "materiality" requirement for a Sentence Six remand, a claimant "must demonstrate that there was a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence" *Sizemore v. Secretary of Health*

*& Human Services*, 865 F.2d 709, 711 (6th Cir.1988).

Dr. Ringold's testimony that he saw Plaintiff more often than reflected by his actual treating records, administered facet injections, and observed her elevating her legs arguably provides at least a partial explanation for his October, 2012, and June, 2013 disability opinions (Tr. 456, 450). However, assuming the veracity of his testimony, ALJ's rationale for rejecting the bulk of his findings is nonetheless well supported. For example, her finding that Plaintiff had not required "frequent treatment of an invasive or extreme nature for exacerbations or hospitalizations," is not contradicted by the post-determination evidence (Tr. 19). Likewise, her observation that she was able to "lift and turn" her disabled husband is supported by the transcript (Tr. 378). In January, 2013, Plaintiff denied current back pain and that her right shoulder condition had improved (Tr. 378). Although Dr. Ringold testified that diarrhea would require frequent unscheduled work breaks, Plaintiff reported in January, 2013 (one year after her last office visit with Dr. Ringold) that she did not experience diarrhea (Tr. 378).

In his testimony, Dr. Ringold criticizes the finding that the January, February, and August, 2011 imaging studies showed "mild" conditions, stating instead that the studies showed "severe" conditions (Tr. 451). However, as found by the ALJ, the January, February, and August, 2011 studies, as well as the remainder of the studies, show mostly mild or unremarkable findings (Tr. 190, 278, 291-294, 296, 364, 371, 393). Likewise, Dr. Ringold's testimony that ulcerative colitis (allegedly causing diarrhea multiple times a day) would

interfere with Plaintiff's work abilities is contradicted by Plaintiff's January, 2013 report to Dr. Dagher that she did not experience diarrhea (Tr. 378, 458, 464).  Dr. Ringold's rationale for his finding that Plaintiff experienced shortness of breath after walking 50 yards (Tr. 460), stands at odds with the cardiac studies and examination records during the relevant period showing unremarkable results.  Dr. Ringold's statement that Plaintiff required lifting restrictions of less than 10 pounds due to Plaintiff's thoracic aneurysm is otherwise unsupported by the treating or non-treating records (Tr. 463).

Moreover, even assuming that Plaintiff could show that the October, 2013 deposition testimony was material to the administrative decision, she cannot show "good cause" for the late submission.  "[G]ood cause contemplates more than strategic delay, or sandbagging, of evidence and more than simple miscalculation of the necessity of producing such evidence in the first instance to establish a claim of disability." *Haney v. Astrue*, 2009 WL 700057, *6 (W.D.Ky. March 13, 2009)(*citing Thomas v. Secretary*, 928 F.2d 255, 260 (8th Cir., 1991)); *See also Ledford v. Astrue*, 311 Fed.Appx. 746, 757, 2008 WL 5351015, *10 (6th Cir. December 19, 2008)(*citing Martin v. Commissioner of Social Security,* 170 Fed.Appx. 369, 374–75, 2006 WL 509293 *5 (6th Cir. March 1, 2006)).

Without doubt, Dr. Ringold's testimony was elicited to sandbag the ALJ's findings. Dr. Ringold began his testimony stating that he disagreed with ALJ's rejection of his disability opinions (Tr. 449).  His subsequent testimony that his treating relationship was more extensive than reflected by the transcript and that the ALJ had misinterpreted the

imaging studies reflects Plaintiff's attempt to have "the last word" rather than shed light on her condition for the relevant period.  Because Plaintiff has provided no reason for the tardy submission and clearly offered this material as a rebuttal to the ALJ's findings, she is not entitled to remand.

In closing, I note that the record shows that Plaintiff experiences some degree of limitation and as such, my recommendation to uphold the Commissioner's decision should not be read to trivialize her condition.   Nonetheless, the record adequately supports the finding that she is capable of a range of exertionally light work.  Because the administrative decision was well articulated and within the "zone of choice" accorded to the fact-finder at the administrative hearing level, it should not be disturbed by this Court.  *Mullen v. Bowen*, *supra*.

## CONCLUSION

For the reasons stated above, I recommend that Defendant's motion for summary judgment be GRANTED and Plaintiff's motion DENIED.

Any objections to this  Report and Recommendation must be filed  within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir.  1991); *United States v. Walters,* 638 F.2d 947 (6th Cir.  1981).  Filing of objections which raise some issues but fail to raise others with

specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir.  1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir.  1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Date: February 19, 2016

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was sent to parties of record on February 19, 2016, electronically and/or by U.S. mail.

s/C. Ciesla
Case Manager

-24-